UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re: PEDRO M. RODAS-ZEA,            Case No. 17-26563-svk

                               (Chapter 7)

           Debtor.

---

PATRICK S. LAYNG
United States Trustee,

           Plaintiff,

                               Adversary Case No. 17-

    v.

PEDRO M. RODAS-ZEA,

           Defendant.

---

**UNITED STATES TRUSTEE'S COMPLAINT TO DENY DISCHARGE**

---

United States Trustee, Patrick S. Layng, by Attorney Michelle S. Y. Cramer, pursuant to 11 U.S.C. § 727(a) and 727(c), requests that the Court deny Pedro Rodas-Zea's discharge because he made false statements under oath about his assets. In support of this complaint, the United States Trustee states:

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(j) and 1334. This is a core proceeding, and the United States Trustee consents to final judgment of the Court.

2. The United States Trustee has standing to file this proceeding under 11 U.S.C. § 307 and 11 U.S.C. § 727(c)(1).

3. Venue for this proceeding is in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1409(a).

Michelle S. Y. Cramer
Attorney for the United States Trustee
Office of the United States Trustee
517 East Wisconsin Avenue, Room 430
Milwaukee, WI 53202
Phone: 414-297-4499; Fax: 414-297-4478

4. This action arises under 11 U.S.C. § 727(a) and Fed. R. Bankr. P. 7001(4).

5. The burden of proof is by a preponderance of the evidence. *Allred v. Vilhauer (In re Vilhauer)*, 458 B.R. 511, 514 (B.A.P. 8th Cir. 2011) (citation omitted); Fed. R. Bank. P. 4005.

6. The Plaintiff, Patrick S. Layng, is the United States Trustee for the Eastern District of Wisconsin and maintains an office at 517 East Wisconsin Avenue, Suite 430, Milwaukee, Wisconsin 53202.

7. The Chapter 7 trustee is Steve McDonald.

8. According to the petition, the Defendant resides at 6745 S. 19th St. Milwaukee, Wisconsin 53221.

9. The extended deadline to object to discharge is December 28, 2017.

10. This adversary proceeding is timely filed.

## I. FACTS

### a. Background Facts

11. In the fall of 2013 the Defendant lived with his parents, Luz Zea ("Zea") and Marcos Alvarez ("Alvarez").

12. On or about September 20, 2013, neighborhood children came to Ms. Zea's home to see "the vicious dog." Ms. Zea and the Defendant were home at the time.

13. The dog attacked one of the children, severely mauling him.

14. The dog bit two other people twice before this incident.

15. On June 24, 2015, the mauled minor child sued the Defendant, Zea and Alvarez.

16. The Defendant filed for relief under Chapter 7 of the United States Bankruptcy Code on June 30, 2017.

17. A trial was held on July 10, 2017, neither the Defendant nor his parents appeared.

18. The court entered a default judgment against Zea and Alvarez on July 14, 2017.

19. Zea filed for bankruptcy on July 27, 2017. *See* case no. 17-27363-svk.

20. The Defendant's spouse did not file for bankruptcy.

b. Bankruptcy Schedules

21. The Defendant signed the bankruptcy schedules and Statement of Financial Affairs (SOFA) under penalty of perjury, declaring that the information disclosed in them was true and correct. Docket No. 1.

22. The Defendant stated his debts were not primarily consumer debts.

23. On Schedule E/F, the Defendant listed the total of his nonpriority unsecured debts as $630,583[1]; included in that amount is a claim for $600,000 for the minor child and unknown amounts for other claims arising from the dog mauling incident.

24. On Schedule A/B, the Defendant reported $17,578 in personal property, which includes a $7,500 boat and $3,100 in jewelry--an engagement ring valued at $1,600 and wedding bands valued at $1,500.

25. On Schedule D, the Defendant reported a secured debt on a Tiffany & Co. engagement ring for $2,500 and he valued the collateral at $1,600.

26. Schedule E/F reports approximately $19,800 in credit card purchases, an estimated $7,000 of which was incurred within two years of filing for bankruptcy.

27. The Statement of Financial Affairs (SOFA), the Defendant reported that in 2015 he earned $6,769; in 2016 he earned $30,589; and in 2017 he earned $39,686 through the date of filing.

---

[1] Dollar amounts are rounded up

28. In his SOFA, the Defendant reported the sale of a 2009 Nissan GTR valued at $37,600 in January 2017. He received $25,600 in cash and a 2014 Honda Civic valued at $12,000 in exchange.

29. In May 2017, the Defendant sold the 2014 Honda Civic and received $15,000.

### b. Meeting of Creditors

30. On July 31, 2017, Trustee Steve McDonald conducted the Chapter 7 first meeting of creditors. After swearing in the Defendant, Trustee McDonald examined him under oath.

31. The Defendant testified that his schedules were true and accurate.

### c. Car Sales and Jewelry Purchases

32. As Trustee McDonald's conducted his questioning he asked the Defendant about the sale of the vehicles.

33. He asked the Defendant what he did with the approximately $40,000 he received from the sale of the vehicles.

34. The Defendant testified he spent it on an engagement ring and "expenses," to include rent, utilities, gas, groceries and credit cards.

35. The Defendant later provided an itemized list of credit card payments of over $15,000 in the months before filing for bankruptcy.

36. The Defendant also stated he bought an engagement ring at Tiffany & Co. for $25,500 in January 2017. He paid $20,000 in cash and financed the balance.

37. In addition to the engagement ring, he also purchased a wedding band for his wife at Tiffany & Co

38. The Defendant was married in February 2017.

39. The Trustee questioned the Defendant about the low value he placed on the jewelry in the schedules.

40. The Defendant stated that the jewelry was appraised before filing bankruptcy and he used that value.

41. The Trustee asked for the valuation sought before the bankruptcy filing and the Tiffany & Co. diamond certification that accompanied the sale of the jewelry.

42. At a subsequent adjourned meeting of creditors the Defendant produced the Tiffany & Co. Retail Replacement Valuation and the diamond certification for the engagement ring and the second valuation his bankruptcy attorney sought for the bankruptcy filing. Exhibits 1 and 2.

43. Tiffany & Co. estimated the retail replacement value of the engagement ring at $24,500.

44. The Defendant did not provide a Tiffany & Co. valuation for his wife's wedding band or his wedding band.

45. The valuation the Defendant received from Shiela's Fine Jewelry and Goldsmith Shop prior to filing for bankruptcy gave a cash value of $1,600 for the engagement ring, $144 for the men's platinum wedding band and $154 for the woman's platinum and diamond wedding band.

46. Upon information and belief, the Defendant's wife financed his platinum wedding band for approximately $4,200.

47. Trustee McDonald later obtained his own valuation of the jewelry. The jeweler, Power's Jewelry, provided a liquidation value of $6,900 for the engagement ring, $1,045 for the women's wedding band and $665 for the men's wedding band.

48. The Defendant amended his Schedule C to exempt the increased value of the jewelry.

## II.   ALLEGATIONS

## COUNT I

<u>The Defendant's Discharge Should Be Denied for Making False Oaths Pursuant to 11 U.S.C. § 727(a)(4)(A)</u>

49. All of the preceding paragraphs are incorporated and realleged herein by reference.

50. Section 727(a)(4)(A) provides that the court may not grant a debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case--(A) made a false oath or account . . ."  11 U.S.C. § 727(a)(4)(A).

51. The burden of proof lies with the plaintiff to establish five elements:   (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with intent to defraud; and (5) the statement is related to the bankruptcy case in a material way.  *In re Tauber*, 349 B.R. 540, 557-558 (Bankr. N.D. Ind. 2006) (citing *[In re] Bailey*, 145 B.R. [919] at 926 [(Bankr. N.D. Ill.1992)].

### a.   Statement Under Oath

52. The first issue to determine is whether the Defendant made a statement under oath. Bankruptcy schedules and statements of financial affairs constitute statements under oath.

53. A debtor's testimony at the § 341 meeting consists of statements made under oath.

54. The Defendant's signed petition, schedules, statement of financial affairs, the amended schedules, and his testimony at the § 341 meetings are statements made under oath.

### b.   False Statements

55. The next issue is whether the Defendant made false statements.  Bankruptcy schedules with material misrepresentations or omissions constitute false statements under oath.

56. The Defendant made a false statement when he valued the engagement ring at $1,600.

6

57. The Defendant made a false statement when he valued the wedding bands at $1,500.

58. The Defendant made false statements at the meeting of creditors when he testified his schedules were true and accurate.

### c. Knowing and Fraudulent

59. Once a false oath is demonstrated, the next issue that needs to be addressed is whether the Defendant made these false statements knowingly and fraudulently.

60. The gross undervaluation of the jewelry in the Defendant's bankruptcy schedules and his testimony at the Chapter 7 meeting of creditors demonstrate either the Defendant's intent to defraud or his reckless indifference for the truth.

61. Section 727(a)(4)(A) "provides a harsh penalty for the debtor who deliberately secretes information from the court, the trustee, and other parties in interest to his case." *Cepelak v. Sears (In re Sears),* 246 B.R. 341, 347 (B.A.P. 8th Cir. Mar. 28, 2000) *citing Mertz v. Rott,* 955 F.2d 596, 598 (8th Cir. 1992); *In re Baskowitz,* 194 B.R. 839, 843 (Bankr. E.D. Mo. 1996). *See also Payne v. Wood*, 775 F.2d 202, 206 (7th Cir. 1985) (requirement that debtor fully schedule all assets allows trustee to identify all claims of ownership and title and to challenge suspect ones).

62. "A debtor has the requisite intent to deceive when his statements are inconsistent with his knowledge." *Van Robinson v. Worley*, 540 B.R. 568, 576 (D.N.C. 2015) *citing Saslow v. Michael (In re Michael)*, 452 B.R. 908 (Bankr. M.D.N.C. July 15, 2011).

63. The Defendant possessed jewelry valuations from Tiffany & Co. where he purchased the jewelry just months earlier. However, the Defendant did not use those valuations but rather sought out bargain-basement cash values from Shiela's Fine Jewelry to report on his schedules.

64. Courts have held that undervaluation alone can be sufficient to deny discharge, reasoning debtors may undervalue their property "in the hope that the trustee will not seize the property to pay the debtor's creditors." *In re Van Robinson, 540 B.R. 577, citing Office of the U.S. Trustee v. Zimmerman (In re Zimmerman)*, 320 B.R. 800, 807-11 (Bankr. M.D. Penn. 2005) (denying discharge on the basis of undervalued *real property and musical instruments); Weiner* v. *Perry, Settles, & Lawson Co. (In re Weiner)*, 208 B.R. 69, 71-72 (9th Cir. B.A.P. 1997) (denying discharge on the basis of undervalued jewelry), *rev'd on other grounds*, 161 F.3d 1216 (9th Cir. 1997); *see also Koss*, 403 B.R. at 213-15 (denying discharge on the basis of undervalued household furnishings in addition to other concealed assets).

65. The facts and circumstances demonstrate the Defendant knowingly and intentionally made false oaths.

### d. Materiality

66. Finally, the plaintiff must show that the false statements made by the debtor relate materially to the bankruptcy case.

67. The Defendant's omissions and false oaths are directly related to his bankruptcy. He failed to accurately disclose the value of his assets and his actions have made the information in his schedules unreliable.

68. "A statement is material so long as it concerns the existence or disposition of a debtor's property. As a result, "[t]here is little that will prove to be immaterial for the purposes of required disclosure if it aids in understanding the debtor's financial affairs and transactions." *Van Robinson v. Worley*, 540 B.R. 568, 573 (D.N.C. 2015), internal citations omitted.

69. A debtor who fails to disclose material information about his financial circumstances should not receive a discharge.

## II. CONCLUSION

70. In light of the significance of the false oaths the Defendant's discharge should be denied pursuant to 11 U.S.C. §§ 727(a)(4)(A).

**WHEREFORE,** Plaintiff requests that the Court deny the Defendant's discharge and for such other relief as is just and equitable.

Dated:   December 28, 2017

                                            RESPECTFULLY SUBMITTED:

                                            PATRICK S. LAYNG
                                            United States Trustee

                                            _____
                                            MICHELLE S. Y. CRAMER
                                            Attorney for the United States Trustee